UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| FERRIS & SALTER, P.C., | Civil No. 12-109 (JRT/SER) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| THOMSON REUTERS CORPORATION, *d/b/a* West Publishing Corporation, *d/b/a* Findlaw, | |
| Defendant. | |

---

Don Ferris, **FERRIS & SALTER PC**, 4158 Washtenaw Avenue, Ann Arbor, MI 48108; and Mark Noel Jennings, **JENNINGS DEWAN & ANDERSON**, 6338 Main Street, P.O. Box 8, North Branch, MN 55056.

John Karl Rossman and Peter A. Koller, **MOSS & BARNETT, PA**, 90 South Seventh Street, Suite 4800, Minneapolis, MN 55402.

Ferris & Salter ("F&S"), a Michigan law firm, brings this action against West Publishing Corporation, doing business as Findlaw ("Findlaw"), alleging breach of contract and professional negligence stemming from Findlaw's reputed failings in designing and managing F&S's website. A Michigan court previously rejected F&S's professional negligence claim, and Findlaw now moves to dismiss that claim on preclusion grounds and because no such claim exists under Minnesota law against computer consultants. Because no Minnesota court has held that a malpractice claim may lie against computer consultants and because F&S offers no persuasive reason to deviate

25

from an abundance of authority suggesting that such a claim does not lie, the Court will grant the motion and dismiss the professional negligence claim.

## BACKGROUND

F&S entered into a contract with Findlaw on September 29, 2006 pursuant to which Findlaw would develop, design, optimize, implement, manage, and host F&S's website. (Decl. of John K. Rossman, ¶¶ 8-9, Ex. B ("Mokosaik Decl."), Mar. 14, 2012, Docket No. 7.) The parties extended the agreement by addendum dated June 15, 2009. (*Id.* ¶ 8.) The contracts had a forum selection clause selecting Minnesota as having exclusive jurisdiction over claims arising from the agreements. (Mokosaik Decl., Ex. A at 5, 8; Ex. B, at 12.)

F&S alleges that in November 2008, "[Findlaw's] professional computer engineer employees and agents negligently destroyed the previous connection/link" that had directed website inquiries to F&S's email accounts. (Compl. ¶ 18, Jan. 13, 2012, Docket No. 1.) Findlaw repaired the problem in February 2010, but during the intervening time, 730 emails were not forwarded to F&S's email accounts because of the error. (*Id.* ¶¶ 19, 22.) As a result of Findlaw's alleged negligence, F&S claims that it lost numerous clients and hundreds of thousands of dollars in attorneys' fees. (*Id.* ¶ 24.)

F&S filed suit in Michigan state court on May 4, 2011, and Findlaw removed the action to the Eastern District of Michigan. (Rossman Decl., Ex. 3, Ex. 1, at 1 ("Michigan order").) The district court granted Findlaw's motion to dismiss on the basis of the forum selection clause in the parties' contracts. (Michigan order at 9.) The Court also observed

that "under Minnesota or Michigan law – no professional negligence action will lie against computer engineers and technicians." (*Id.* at 5-6.) The dismissal was "without prejudice," and did not limit "[F&S's] ability to refile [the] action in an appropriate forum." (*Id.* at 9.)[1] Alleging professional negligence and breach of contract, F&S filed this action in Minnesota on January 13, 2012. Findlaw now moves to dismiss the professional negligence claim under Rule 12(b)(6) and to extend time to answer the complaint in the event the motion is denied.

## ANALYSIS

### I. STANDARD OF REVIEW

Reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to the non-moving party. *See, e.g.*, *Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). To survive a motion to dismiss, however, a complaint must provide more

---

[1] Since the complaint pled only "professional negligence" and not breach of contract, the Michigan court first addressed F&S's argument that the contracts were irrelevant. The court found inapposite the District of Minnesota case on which F&S relied for the proposition that computer consultants were proper subjects of malpractice claims, *Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 967 F. Supp. 1148 (D. Minn. 1997), and concluded that "[F&S] has not provided any evidence that the courts in Minnesota would extend the cited *Piper Jaffray* definition by recognizing a professional negligence action against computer consultants and technicians." (Michigan order at 4-5.)

The Court went on strongly to suggest, however, that Michigan choice of law rules would likely direct it to apply Michigan's substantive law to the dispute, not Minnesota's. (*Id.*) Without precisely articulating which body of law would apply, the Court concluded: "under Minnesota or Michigan law – no professional negligence action will lie against computer engineers and technicians." (*Id.* at 6.) Accordingly, the court construed F&S's "professional negligence" allegation as though pled in contract. (*Id.*)

than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, to avoid dismissal, a complaint must include "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). Rule 12(b)(6) also authorizes the court to dismiss a claim on the basis of a dispositive legal issue. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

## II. FINDLAW'S MOTION TO DISMISS

Findlaw relies on issue preclusion, the law of the case doctrine, and the absence of Minnesota authority supporting a malpractice action against computer consultants in urging the Court to dismiss the claim. The Court finds inapplicable issue preclusion and the discretionary law of the case doctrine,[2] but concludes that the professional negligence claim must be dismissed because no such cause of action exists under Minnesota law.

The issue is whether Minnesota law recognizes a malpractice claim against computer consultants. It appears that no Minnesota court has directly addressed the question, and R&S concedes that it is one of first impression.[3] Courts interpreting New

---

[2] Among the five requirements of issue preclusion is that the prior determination was essential to the previous judgment. *Robinette v. Jones*, 476 F.3d 585, 589 (8th Cir. 2007). Here, the Michigan court's pronouncement about the content of Minnesota law was not essential to its decision because the court strongly suggested that Michigan law – not Minnesota law – would apply. (Michigan order, at 4-5.) There exists, then, no "law of the case" on this issue.

[3] R&S primarily relies – as it did in Michigan – on *Piper Jaffray Cos.*, which stated: "A 'professional service,' within the meaning of an insurance exclusion, 'is one calling for

(Footnote continued on next page.)

- 4 -

York,[4] Wisconsin,[5] Michigan,[6] and Pennsylvania[7] law have all concluded that computer consultants are not subject to malpractice suits, however, and R&S offers no persuasive reason why the Minnesota Supreme Court would reach a different conclusion. As one leading treatise explains:

> Most practitioners in computer consulting, design, and programming do not fit a model that creates malpractice liability. These businesses and "professional" parties clearly engage in complex and technically sophisticated activities. Computer programmers commonly define themselves as "professionals." Yet, despite the complexity of the work, computer programming and consultation lack the indicia associated with professional status for purposes of imposing higher standards of reasonable

---

(Footnote continued.)

specialized skill and knowledge in an occupation . . . [t]he skill required to perform a professional service is predominantly intellectual or mental rather than physical.'" *Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 967 F. Supp. 1148, 1156 (D. Minn. 1997) (quotation omitted). The Court agrees with the Michigan court that *Piper Jaffray* is inapplicable because this dispute does not involve interpretation of a professional services exclusion in an insurance policy.

[4] *Columbus McKinnon Corp. v. China Semiconductor Co., Ltd.*, 867 F. Supp. 1173, 1182 (W.D.N.Y. 1994) ("There is no basis in law for extending the doctrine of professional malpractice to cover independent computer consultants."); *Hosp. Computer Sys., Inc. v. Staten Island Hosp.*, 788 F. Supp. 1351, 1361 (D. N.J. 1992) (rejecting the argument that New York law supports a claim of professional malpractice against computer consultants).

[5] *Racine Cnty. v. Oracular Milwaukee, Inc.*, 767 N.W.2d 280, 286, 289 (Wis. Ct. App. 2009) ("There is no evidence in the record that lets us decide if the occupation of computer consultants is a 'profession.' From our own experience, we know that many computer skills are learned 'hands on' and not during long and intensive training. We also know that the state of Wisconsin does not license computer consultants. We are not aware of any enforceable code of ethics governing computer consultants.").

[6] *Heidtman Steel Prods., Inc. v. Compuware Corp.*, No. 3:97-CV-7389, 2000 WL 621144, at *14 (N.D. Ohio Feb. 15, 2000) ("There is no precedent in Michigan to recognize[e] computer consultants as professionals.")

[7] *Rapidigm Inc. v. ATM Mgt. Servs., LLC*, 63 Pa. D. & C.4th 234, 249 (Pa. Com. Pl. 2003).

> care. While programming requires significant skill and effective consultation requires substantial business and technical knowledge, the ability to practice either calling is not restricted or regulated at present by state licensing laws. If anything, programming skills have proliferated throughout the general public during the past decade and become less, rather than more, the exclusive domain of a profession specially trained and regulated to the task. Unlike traditional professions, while practitioner associations exist, there is no substantial self-regulation or standardization of training within the programming or consulting professions.

Raymond T. Nimmer, The Law of Computer Tech. § 9.30 (4th ed., Thomson Reuters 2012). Society imposes on professionals a higher standard of care than non-professionals, as evidenced by state licensing requirements or standards promulgated by professional organizations. *Hosp. Computer Sys., Inc. v. Staten Island Hosp.*, 788 F. Supp. 1351, 1361 (D. N.J. 1992). This heightened code of ethics engenders trust in professionals beyond the marketplace norm, and "[w]hen no such higher code of ethics binds a person, such trust is unwarranted." *Id.* In these cases, only duties created by contract or under ordinary tort principles are applicable. *Id.*

R&S offers no indication that Minnesota has imposed upon computer consultants a heightened standard of care. For example, Minnesota statutes governing licensing and continuing education requirements for certain professionals that establish rules applicable to malpractice claims do not mention providers of computer-related services.[8] In short, R&S offers no compelling reason to deviate from the persuasive reasoning of cases

---

[8] *See, e.g.*, Minn. Stat. §§ 326.01, *et seq.* (setting forth initial and continuing licensing requirements for engineers, architects, surveyors, landscape architects, geoscientists and others); *id.* § 544.42 (defining "professional" to mean "a licensed attorney or an architect, certified public accountant, engineer, land surveyor, or landscape architect . . . ." and establishing rules governing certain claims against such professionals).

declining to recognize malpractice claims against computer consultants, and none of the cases on which it relies suggests that Minnesota courts would reach a different result.[9]

Finally, the Court is not persuaded by counsel's suggestion at oral argument that the Court should withhold judgment until discovery reveals precisely who undertook the allegedly negligent acts and the nature of their technical training, if any. Whether a malpractice claim lies against computer consultants under Minnesota law does not hinge upon the training of the particular consultant at issue. *See Neitzke*, 490 U.S. at 326-27 ("[I]f as a matter of law it is clear that no relief could be granted . . . a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." (Internal quotation marks and citation omitted)). Absent Minnesota precedent that a professional negligence claim may lie against a computer consultant, and in the face of a proliferation of persuasive authority to the contrary, the Court declines to recognize such a claim and will grant Findlaw's motion to dismiss it.

---

[9] Some of the cases R&S cites deal with occupations long considered professions under Minnesota case law. *See, e.g.*, *City of Eveleth v. Ruble*, 225 N.W.2d 521, 523, 525-30 (Minn. 1974) (engineer); *City of Mounds View v. Walijarvi*, 263 N.W.2d 420, 422-25 (Minn. 1978) (architect). Other cases involving services contracts, while offering some support for the proposition that computer consultants might be held to a professional standard of care under certain circumstances, fail to persuade the Court that the Minnesota Supreme Court would deviate from the reasoning discussed above. *See, e.g.*, *Diversified Graphics, Ltd v. Groves*, 868 F.2d 293 (8th Cir. 1989) (holding accounting firm to a professional standard of care with respect to its expertise in the area of computer systems on the ground that the plaintiff contracted for the benefit of the firm's expertise in that area); *Data Processing Services, Inc. v. L.H. Smith Oil Corporation*, 492 N.E.2d 314, 319-20, 322 (Ind. Ct. App. 1986) (finding applicable to computer programmers the general principle that those holding themselves out as possessing skill in a trade or profession impliedly represent that they possess and will exhibit the skill ordinarily possessed by members of that profession).

**ORDER**

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Dismiss the Professional Negligence claim [Docket No. 4] is **GRANTED**.

2. Defendant's unopposed request to extend time to answer the complaint is **GRANTED**. Defendant shall file and serve an answer not later than fourteen (14) days from the date of this Order.

DATED: September 4, 2012            _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                                                 United States District Judge